OPINION
Appellants-Plaintiffs Marlene Bundy, Victoria Trinkett, Mike Lakin and Colleen Lakin (hereinafter collectively referred to as "the Plaintiffs") are appealing a decision of the Montgomery County Common Pleas Court granting Appellees-Defendants Katharine and Jack Harrison's motion for partial summary judgment.
The Plaintiffs filed a complaint on February 1, 2000 against the Harrisons. The complaint alleged that the Plaintiffs were the owners of individual condominiums at Parkplace on Grand. Jack Harrison had created the condominium complex in 1988, and he had transferred his entire interest in the complex to Katharine via general warranty deed on December 30, 1991.
Bundy purchased her unit from Katharine Harrison for $35,900 on March 10, 1994, and she accepted the deed for this interest in May of 1994. Trickett entered into a contract to purchase her unit in March of 1994 for $27,500, and she accepted the deed in May of 1994. The Lakins purchased their unit on January 16, 1996 for $18,500, and they accepted the deed in March of 1996.
The complaint asserted four causes of action against the Harrisons, two of which are at issue in this appeal. Count I of the complaint is based upon the Harrisons' failure to provide any of the buyers with a disclosure statement as required under R.C. 5311.26. The Plaintiffs asserted that as a result of this violation of R.C. 5311.26, they were entitled to rescind their transactions and receive full refunds, including reimbursement of closing costs. In Count IV, also at issue in this appeal, the Plaintiffs argue that they were entitled to damages for relying upon the non-disclosure, which amounted to an intentional misrepresentation.
On December 1, 2000, Jack Harrison filed a motion for summary judgment arguing that since he sold his interest to Katharine Harrison prior to the purchase of the condominiums at issue, he should not be a party to this lawsuit. The Plaintiffs responded by reiterating facts as alleged in their complaint that Jack Harrison had acted as the "developer" or the "agent" for Katharine Harrison. The trial court found a genuine issue of material fact remained regarding the role Jack Harrison had played in these transactions, and consequently denied Jack Harrison's motion for summary judgment. Accordingly, for purposes of this appeal, we will refer collectively to "the Harrisons."
The Harrisons filed a motion for partial summary judgment on August 1, 2001 regarding Counts I and IV, to which the Plaintiffs responded on August 20, 2001. The trial court granted the Harrisons' motion on September 17, 2001. The Plaintiffs filed a notice of dismissal without prejudice regarding the remaining two counts in the complaint. The Plaintiffs now appeal the trial court's decision granting the Harrisons' motion.
 I. The trial court erred in [g]ranting Defendants' [m]otion for [p]artial [s]ummary [j]udgment.
 The Plaintiffs contend that the trial court erred in granting summary judgment on the issue of damages under R.C. 5311.27(A) and (B)(1) and for fraud.
When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. of Edn. (1997),122 Ohio App.3d 378, 383, citing Dupler v. Mansfield Journal Co. (1980),64 Ohio St.2d 116, 119-120, 18 O.O.3d 354, 356-357. Thus, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711.
Summary judgment can be appropriately granted where (1) "there is no genuine issue as to any material fact; (2) * * * the moving party is entitled to judgment as a matter of law; and (3) * * * reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64,66, 8 O.O.3d 73, 74; see, also, Civ.R. 56(C). The movant has the burden to prove that no genuine issues of material fact exist by specifically pointing to evidence in the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which show that the non-movant has no evidence to support its claims. Harless, supra; Dresherv. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C).
We note that Revised Code Chapter 5311 was enacted to protect condominium purchasers. As the Third District Court of Appeals noted:
 R.C. Chapter 5311 was enacted by the General Assembly to effect controls which would tend to eliminate abuses existing in the condominium industry and to provide remedies for such abuses to condominium purchasers. Obviously because of the combinations of sole and common ownership as well as the existence of a condominium governing body exercising some control over the rights and obligations of an individual condominium owner, and sometimes intervening either advantageously or disadvantageously to the individual owner's interests between the individual owner and the developer, the determination of an individual owner's traditional and actual damages in a given situation might become overwhelmingly difficult, if not impossible. The legislature's solution to these problems was to provide that for certain statutory violations by a developer the damages recoverable by an individual owner would be measured by the statutory formula set forth in R.C. 5311.27(B). The legislature has made its determination of the existence of causation, i.e., that a violation of R.C. 5311.25 or 5311.26 in the sale of a condominium ownership interest causes and results in damages to the purchaser in the amount determined by application of the statutory formula. The damages thus determined are not only statutory damages but tantamount to liquidated damages for the violations involved. It is our opinion that the legislature has fulfilled any requirements as to the existence of causation.
 Springer v. Koehler Bros. (1990), 69 Ohio App.3d 592, 596. Furthermore, the Ohio Supreme Court has determined that R.C. 5311.26 imposes strict liability for failure to disclose relevant financial information regarding the condominium development to prospective buyers. Belvedere Condominium Unit Owners' Assoc. v. R.E. Roark Companies, Inc. (1993), 67 Ohio St.3d 274, 285-286.
In the case sub judice, the statute at issue, R.C. 5311.27, is as follows, in pertinent part:
 (A) In addition to any other remedy available, a contract or agreement for the sale of a condominium ownership interest that is executed in violation of section 5311.25 or 5311.26 of the Revised Code shall be voidable by the purchaser for a period of fifteen days after the date of sale of the condominium ownership interest or fifteen days after the date upon which the purchaser executes a document evidencing receipt of the information required by section 5311.26 of the Revised Code, whichever occurs later. Upon exercise of this right to void the contract or agreement, the developer or his agent shall refund fully and promptly to the purchaser any deposit or other prepaid fee or item and any amount paid on the purchase price, and shall pay all closing costs paid by the purchaser or for which he is liable in connection with the void sale.
 (B) Any developer or agent who sells a condominium ownership interest in violation of section 5311.25
or 5311.26 of the Revised Code shall be liable to the purchaser in an amount equal to the difference between the amount paid for the interest and the least of the following amounts:
 (1) The fair market value of the interest as of the time the suit is brought;
 (2) The price at which the interest is disposed of in a bona fide market transaction before suit;
 (3) The price at which the unit is disposed of after suit in a bona fide market transaction, but before judgment. In no case shall the amount recoverable under this division be less than the sum of five hundred dollars for each violation against each purchaser bringing an action under this division, together with court costs and reasonable attorneys' fees. If the purchaser complaining of the violation of section 5311.25 or 5311.26 of the Revised Code has brought or maintained an action he knew to be groundless or in bad faith and the developer or agent prevails, the court shall award reasonable attorneys' fees to the developer or agent.
 The first issue for our review surrounds the trial court's decision that the Plaintiffs were not entitled to relief under R.C. 5311.27(A). The Harrisons admittedly failed to provide the Plaintiffs with the requisite disclosure statement under R.C. 5311.26. The trial court found that because the disclosure statement had never been provided to the Plaintiffs, and the Plaintiffs had never executed a document evidencing receipt of such information, the Plaintiffs were not entitled to relief under R.C. 5311.27(A). The Plaintiffs reason that the trial court erred in its determination that R.C. 5311.27(A) did not apply in this case. They argue that because the fifteen day period did not "expire," they should be permitted to rescind their contract with the Harrisons.
We agree with the trial court's determination that the fifteen day period under R.C. 5311.27(A) had not even begun to run, as the record is devoid of any indication that the Plaintiffs had ever signed the required disclosures. As such, we find that the trial court did not err in deciding that R.C. 5311.27(A) does not apply in this instance.
The next issue is whether the trial court erred by deciding that the amount of damages owed to each plaintiff under R.C. 5311.27(B) was limited to the five hundred dollar statutory minimum.
The trial court addressed the applicability of each subsection of R.C.5311.27(B). In response to the Harrisons' interrogatories, the plaintiffs indicated that the fair market value of their properties had appreciated substantially since the time of purchase. Because none of the Plaintiffs had sustained a loss in property value, the trial court refused to apply R.C. 5311.27(B)(1) and grant damages in the "difference" between the purchase price and the fair market value of the units to the Plaintiffs. The trial court also declined to apply the formulas under R.C. 5311.27(B)(2) and (3), as none of the condominium units had been sold and the Plaintiffs had retained possession of their units. As a result, the trial court determined that the five hundred dollar provision in R.C. 5311.27(B)(3) would apply, and thus found that the Harrisons owed each plaintiff five hundred dollars.
The Plaintiffs contend that under R.C. 5311.27(B)(1), the Harrisons should be ordered to pay damages in the amount of the difference between the purchase price of the condominiums and the fair market values of their condominium units at the date of the filing of the complaint, regardless of whether there was an increase or a decrease in fair market value of the property.
It is clear that R.C. 5311.27(B) is applicable to this case, as the Harrisons violated R.C. 5311.26. We agree that the Plaintiffs should be compensated under the statute, as the general purpose of R.C. Chapter 5311 is to implement controls to prevent abuses to condominium purchasers. Springer, supra. However, the General Assembly's motivation behind the chapter is to protect the purchaser, not to give the purchaser a windfall. If we interpret the section according to the Plaintiffs, they not only receive an increase in property value, but they would double that award by recovering the "difference" under R.C. 5311.27(B)(1). We do not believe that this was the General Assembly's intent.
Furthermore, we are guided by the principle of statutory construction that we should interpret statutes to avoid absurd results. State exrel. Dispatch Printing Co. v. Wells (1985), 18 Ohio St.3d 382, 384. It would be absurd to interpret R.C. 5311.27(B) to denote that even though the Plaintiffs' property appreciated in value, the Plaintiffs should be permitted to recover that appreciable difference as "damages" from the Harrisons.
Accordingly, because the fair market value of the condominiums at the time the complaint was filed was greater than their purchase prices, and because there is evidence in the record that the condominiums are still owned by the Plaintiffs, we agree with the trial court that the portion of R.C. 5311.27(B)(3) which would apply is the five hundred dollar minimum per violation.
The Plaintiffs' final argument for our review is the trial court's granting of summary judgment on the Plaintiffs' fraud claim.
The Plaintiffs were required to prove the following elements to establish a claim of fraud:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.
 Amerifirst Savings Bank of Xenia v. Krug (1999), 136 Ohio App.3d 468, 490-91, citing Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. Intent to mislead can be inferred or presumed depending on the facts and circumstances of the case. Jenkins v. Clark (1982), 7 Ohio App.3d 93, 101.
According to the Plaintiffs, since the Harrisons failed to disclose the items as required by R.C. 5311.26, this omission sufficiently supported their claim for relief under a fraud theory, and the trial court erred in granting summary judgment on this issue. The Plaintiffs further contend that the trial court read Count IV of the complaint as a claim for negligent misrepresentation and not for fraud. The trial court found that a claim for negligent misrepresentation cannot be based upon an omission, but must be founded on an affirmative misrepresentation. Consequently, the trial court granted summary judgment on this issue because it found that the Plaintiffs had failed to provide evidence that the Harrisons had supplied false information in any of the purchase transactions.
In reviewing the trial court's decision, we find that the trial court did erroneously utilize the standard for negligent misrepresentation. In a negligent misrepresentation claim, one must prove that they were "supplie[d] false information" via an affirmative false statement, and thus it cannot be predicated upon an omission. Textron Fin. Corp. v.Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, 149. For a claim in fraud, an omission may be a basis for the claim if there was a duty to disclose such a fact. Amerifirst, supra, at 490-491.
The Plaintiffs in this case provided undisputed evidence that the Harrisons had failed to provide the disclosure statement. In reviewing the record and construing all facts most strongly in favor of the Plaintiffs, we find that the Plaintiffs have failed to provide any evidence as to the remaining factors in their fraud claim. In particular, the Plaintiffs must show that the Harrisons' failure to provide the disclosure document was made with the intent of misleading the Plaintiffs. This they failed to do. Thus, in reviewing the decision denovo, we find that the trial court was correct in finding that the Plaintiffs had failed to provide the requisite evidence to support their claims, and we affirm the trial court's grant of summary judgment to the Harrisons, though we do so on different grounds. See State ex rel.Cassels v. Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217,222 (a reviewing court is not authorized to reverse a correct judgment simply because erroneous reasons have been assigned as the basis of the judgment).
Accordingly, we overrule the Plaintiffs' assignment of error.
The judgment of the trial court is affirmed.
WOLFF, P.J., and GRADY, J., concur.